**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| DOROTHY SIMS o/b/o L.D.S., a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:24CV1081 |
| FRANK J. BISIGNANO, Commissioner of Social Security, | ) ) ) ) | |
| Defendant.[1] | ) ) ) | |

<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff, Dorothy Sims, brought this action on behalf of her minor grandchild, L.D.S., pursuant to the Social Security Act (the "Act"), to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Child Supplemental Security Income ("CSSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 8 (Plaintiff's Brief); Docket Entry 9 (Commissioner's Memorandum);

---

[1] The United States Senate confirmed Frank J. Bisignano as the Commissioner of the Social Security Administration on May 6, 2025, and he took the oath of office on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should substitute for Carolyn W. Colvin as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Docket Entry 11 (Plaintiff's Reply).)  For the reasons that follow, the Court should enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for CSSI on behalf of her grandchild L.D.S. (Tr. 285-300.) Following denial of that application initially (Tr. 80-88, 104-13) and on reconsideration (Tr. 89-99, 126-33), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 134). Plaintiff, L.D.S., and their attorney attended the hearing. (Tr. 46-65.) The ALJ subsequently ruled that L.D.S. did not qualify as disabled under the Act. (Tr. 7-33.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 282-84, 446-55), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [L.D.S.] . . . was a school-age child on June 24, 2021, the date the application was filed, and is currently a school-age child.
>
> 2. [L.D.S.] has not engaged in substantial gainful activity since June 24, 2021, the application date.
>
> . . .
>
> 3. [L.D.S.] has the following severe impairments: attention deficit hyperactivity disorder [("ADHD")], oppositional defiant disorder [("ODD")], [and] loss of voice.
>
> . . .
>
> 4. [L.D.S.] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

-2-

. . .

5. [L.D.S.] does not have an impairment or combination of impairments that functionally equals the severity of the listings.

. . .

6. . . . [L.D.S.] has not been disabled, as defined in the . . . Act, since June 24, 2021, the date the application was filed.

(Tr. 13-27 (bold font and internal citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." <u>Hines v. Barnhart</u>, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." <u>Frady v. Harris</u>, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." <u>Hines</u>, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34 (4th Cir. 1993) (quoting

-3-

<u>Richardson v. Perales</u>, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." <u>Mastro v. Apfel</u>, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and a child under the age of 18 qualifies as disabled if he or she has "a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional

-4-

limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months," 20 C.F.R. § 416.906. In resolving such a claim, the ALJ must follow a three-step sequential evaluation process to consider whether a claimant (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets or either medically or functionally equals a listed impairment. 20 C.F.R. § 416.924.

## B. Assignment of Error

In Plaintiff's sole issue on review, she contends that "[s]ubstantial evidence does not support the ALJ's findings that L.[D.]S. had less-than-marked limitations in her abilities to attend and complete tasks, interact and relate with others, and care for herself." (Docket Entry 8 at 3 (bold font and block formatting omitted); see also Docket Entry 11 at 1-5.) More specifically, Plaintiff asserts that, "[w]hen assessing a child's ability to function . . ., an ALJ will consider factors such as the activities that [the child] can and cannot do, how limited [the child] is in [his or] her ability to perform activities when compared to other children [the child's] age, and the types of help that [the child] receives in order to do [those] activities." (Docket Entry 8 at 4.) According to Plaintiff, "L.[D.]S.'s record shows that she received frequent and intensive help and still had significant difficulties attending and completing tasks, interacting with others, and caring for herself." (Id.) In that regard, Plaintiff argues that the ALJ did not acknowledge much of

-5-

L.[D.]S.'s behavior issues or the extent of the help that she received" (id. at 10 (bold font and block formatting omitted)) and, thus, that "her functioning [wa]s much more impaired then what the ALJ acknowledged" (id. at 12), which warrants "remand" (id.). For the reasons that follow, Plaintiff's arguments fail as a matter of law.

In order to determine whether a child's impairment(s) functionally equal(s) a listing, the ALJ must consider how the child functions in six different broad areas of functioning (or "domains") "intended to capture all of what a child can or cannot do," 20 C.F.R. § 416.926a(b)(1): "(I) Acquiring and [U]sing [I]nformation; (ii) Attending and [C]ompleting [T]asks; (iii) Interacting and [R]elating with [O]thers; (iv) Moving about and [M]anipulating [O]bjects; (v) Caring for [Y]ourself; and (vi) Health and [P]hysical [W]ell-[B]eing," id. A child's impairments functionally equal a listing if the child has "'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). A "marked" limitation "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added). An "extreme" limitation "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities," but "does not necessarily mean a total lack or loss of ability to function." 20 C.F.R. § 416.926a(e)(3)(i) (emphasis added).

Here, the ALJ found that L.D.S. had "<u>less than a marked</u>" limitation in Acquiring and Using Information, Attending and Completing Tasks, Interacting and Relating with Others, and Caring for Yourself, and "<u>no</u> limitation" in Moving about and Manipulating Objects and Health and Physical Well-Being. (Tr. 16-17 (emphasis in original); <u>see also</u> Tr. 21-27 (setting forth more detailed functional domain analysis).) Because, as discussed in more detail below, the ALJ supported those findings with substantial evidence, and did not fail to consider "much of L.[D.]S.'s behavior issues or the extent of the help that she received" (Docket Entry 8 at 10 (bold font and block formatting omitted)), Plaintiff's challenges to those findings fall short.

## 1.  Attending and Completing Tasks

With regard to this domain, the ALJ first recited the regulatory considerations as follows:

> This domain considers how well a child is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the mental pace at which she performs activities and the ease of changing activities. Attending and [C]ompleting [T]asks also refers to a child's ability to avoid impulsive thinking and her ability to prioritize competing tasks and manage her time.
>
> Social Security rules provide that a school-age child without an impairment should be able to focus her attention in a variety of situations in order to follow directions, remember and organize school materials, and complete classroom and homework assignments. The child should be able to concentrate on details and not make careless mistakes in her work (beyond what would be expected in other children of the same age who do not have impairments). The child should be able to change activities or routines without distractions, and stay on task and in place when appropriate. The child should be able to sustain attention well enough to participate in

-7-

group sports, read by herself, and complete family
chores. The child should also be able to complete a
transition task (e.g., be ready for the school bus,
change clothes after gym, change classrooms) without
extra reminders and accommodation.

. . . Some examples of difficulty children could have in
[A]ttending and [C]ompleting [T]asks are: (i) is easily
startled, distracted, or over-reactive to everyday
sounds, sights, movements, or touch; (ii) is slow to
focus on, or fails to complete, activities of interest
(e.g., games or art projects); (iii) repeatedly becomes
side-tracked from activities or frequently interrupts
others; (iv) is easily frustrated and gives up on tasks,
including ones she is capable of completing; (v) requires
extra supervision to remain engaged in an activity; or
(vi) cannot plan, manage time, or organize self in order
to complete assignments or chores.

(Tr. 22-23 (citing 20 C.F.R. § 416.926a(h) and Social Security
Ruling 09-4p, <u>Title XVI: Determining Childhood Disability – The
Functional Equivalence Domain of "Attending and Completing Tasks</u>,"
2009 WL 396033 (Feb. 17, 2009)) (internal citations omitted).)

The ALJ then provided the following rationale for finding a
"less than marked limitation" (Tr. 23 (underscoring omitted)) in
the domain at issue:

In the June 28, 2021 function report, [Plaintiff]
reported that [L.D.S.] did not help around the house, do
what she was told, go to school on time, keep busy on her
own, or finish what she starts such as homework or
chores. It was noted that [L.D.S.] would only focus on
a task if it was something in which she was interested
and that she had trouble focusing in school work or other
projects. However, <u>[L.D.S.] is completing her school
work in a manner sufficient to maintain grade level
performance</u>. In the 13 subcategories of the domain of
Attending and Completing Tasks, the teacher questionnaire
from October 2019 indicated "<u>a serious problem" noted
[sic] in five subcategories and a "slight" problem was
noted in four of the subcategories. No limitation was
noted in the subcategory of carrying out single step
instructions</u>. Again, social and emotional dysregulation
was noted as the primary impediment. In the more recent
teacher questionnaire from December 2022, for the domain

-8-

of Attending [a]nd Completing Tasks, <u>a serious problem was noted in three of the 13 subcategories and a slight problem was noted in two of the subcategories. All other subcategories were rated at no limitation</u>.

(<u>Id.</u> (internal citation omitted) (emphasis added).)

Notably, the ALJ summarized the teacher's ratings in this domain on the October 2019 questionnaire as reflecting more degree of impairment than the teacher actually found. Although the ALJ stated that the teacher noted "'a serious problem'" in five subcategories (<u>id.</u> (quoting Tr. 334)), the teacher actually did not identify <u>any</u> areas that presented as "[a] serious problem" (or "[a] very serious problem") (Tr. 334). The teacher marked seven subcategories as areas in which L.D.S. had "[a]n obvious problem," five subcategories as reflecting "[a] slight problem," and one subcategory as presenting "[n]o problem." (<u>id.</u>) Such findings correlate to a less than marked limitation in that domain. <u>See Golibersuch o/b/o N.R.G. v. Commissioner of Soc. Sec.</u>, No. 18CV976, 2020 WL 409991, at *4–5 (W.D.N.Y. Jan. 24, 2020) (unpublished) ("[The p]laintiff argues that the fact that educators noted obvious problems across a domain is compelling evidence of a marked limitation. The [c]ourt disagrees. 'Obvious' problems in a domain do not necessarily equate to a marked limitation in that domain." (some internal quotation marks, brackets, ellipsis, and citation omitted) (collecting cases)).

With regard to the December 2022 teacher questionnaire, the ALJ accurately recounted that the teacher found no areas reflecting very serious problems, three activities presenting a serious

-9-

problem, no activities posing an obvious problem, and the remaining areas involving slight or no problems. (Tr. 23; see also Tr. 390 (Dec. 2022 teacher questionnaire rating page for Attending and Completing Tasks).) Despite the greater levels of functional impairment reflected on this questionnaire as compared to the earlier October 2019 questionnaire (compare Tr. 334, with Tr. 390), such ratings remain consistent with a finding of a less than marked limitation in Attending and Completing Tasks, see April R. o/b/o S.I. v. Dudek, No. 22CV50126, 2025 WL 860172, at *4 (N.D. Ill. Mar. 19, 2025) (unpublished) ("[O]f the thirteen listed categories in th[e] domain [of Attending and Completing Tasks], the May 2018 teacher questionnaire marked the [child] claimant as having three serious problems, the October 2018 teacher questionnaire marked the [child] claimant as having two serious problems, and the 2021 teacher questionnaire marked him as having two serious problems and two very serious problems. While [the p]laintiff may disagree with the ALJ's evaluation of the evidence, th[e c]ourt cannot reweigh the evidence. The [c]ourt concludes that the ALJ sufficiently supported his finding that the [child] claimant had less than marked limitations in this domain." (internal quotation marks and citations omitted) (emphasis added)); Candice M. o/b/o L.B. v. Commissioner of Soc. Sec., No. 1:20CV1076, 2022 WL 624064, at *3 (W.D.N.Y. Mar. 3, 2022) (unpublished) ("[The p]laintiff appears to argue the teachers' assessments of 'serious' or 'very serious' problems in their questionnaires necessarily equate to 'marked' or 'extreme' limitations, based on the definitions of those

-10-

limitations in the regulations. However, [the p]laintiff's inference is misplaced and without legal authority. A teacher opinion that a claimant has some limitations within a domain is not necessarily inconsistent with an ALJ's conclusion that those limitations were 'less than marked.' . . . [U]nder the substantial evidence standard it is not enough for [the p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Substantial evidence 'means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (internal citation omitted) (citing 20 C.F.R. § 416.926a(e), and quoting <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019)); <u>Adams v. Barnhart</u>, No. 06CV1044, 2006 WL 4045933, at *3 (D. Kan. Dec. 1, 2006) (unpublished) ("In the [three] teacher questionnaires, the number of <u>serious or very serious problems</u> in the 13 categories was as follows: <u>2 of 13, 4 of 13, and 3 of 11</u>. Given that a marked limitation is one that 'seriously' interferes with the child's ability to independently initiate, sustain or complete activities, these questionnaires provide support for the ALJ's finding that [the] plaintiff's limitation in the domain of [A]ttending and [C]ompleting [T]asks is <u>less than marked</u>." (emphasis added)).

Moreover, the ALJ found "persuasive" the opinions of the state agency psychological consultants (Tr. 21), who also found L.D.S. had a "less than marked" limitation in Attending and Completing Tasks (Tr. 85, 95). Significantly, Plaintiff did not contest that finding by the ALJ. (<u>See</u> Docket Entries 8, 11.) Those opinions,

-11-

when considered with evidence that L.D.S. maintained grade-level performance and the teacher questionnaires upon which the ALJ also relied, amount to substantial evidence to support the ALJ's finding that L.D.S. experienced "less than marked" limitation in Attending and Completing Tasks. See, e.g., Williams ex rel. R.M. v. Astrue, No. 1:11CV2135, 2012 WL 3283427, at *8 (N.D. Ohio Aug. 10, 2012) (unpublished) (describing state agency psychologist's "opinion that the claimant was less than markedly limited in attending and completing tasks . . . [a]s medical expert opinion evidence upon which the ALJ was permitted to rely"); Adams ex rel. J.A. v. Barnhart, Civ. No. 05-134, 2005 WL 3832408, at *3 n.4 (D. Me. Mar. 6, 2005) (unpublished) ("[T]wo state-agency psychologists found no limitation or less than marked limitations in these domains . . . . The [ALJ] was entitled to rely on the medical evidence provided by the state-agency psychologists." (internal citations omitted)).

Furthermore, a review of the ALJ's decision undermines Plaintiff's argument that the ALJ ignored "much of L.[D.]S.'s behavior issues or the extent of the help that she received" (Docket Entry 8 at 10 (bold font and block formatting omitted)). In discussing the record, the ALJ acknowledged the following evidence reflecting both L.D.S.'s "behavior issues" (id. (bold font and block formatting omitted)) and "the help that she received"(id. (bold font and block formatting omitted)):

- "[Plaintiff] testified that [L.D.S.] . . . ha[d] an [Individualized Education Program ('IEP')] . . . that . . . was initiated because [she] was behind

-12-

in her class" (Tr. 17) and "to better manage social-emotional issues" (Tr. 18);

- "[Plaintiff] testified that [L.D.S.] was suspended from school in December 2022 for having a tantrum, throwing tables and talking about killing herself and [Plaintiff,]" as well as that "[L.D.S.] w[ould] cry and be disrespectful, hide in the hallway, or leave the building" (Tr. 17);

- during a consultative psychological examination in February 2020, "[n]oted interpersonal conflicts at school included throwing tantrums, getting into a fight for which she was suspended and having had two suspensions in the school year[,]" as well as "meltdown[s] if she does not finish something that she enjoys" and "trouble cal[m]ing herself when having a tantrum or meltdown" (Tr. 18 (internal quotation marks omitted));

- "[a] March 22, 2021 note from [P]remier [H]ealth and [W]ellness continue[d] to indicate issues with disruptive behavior and irritable mood with 2 to 3 major outburst[s] per week . . . associated with verbal and physical aggression, and past incidents of suicidal action (for example, grabbing the kitchen [kn]ife) were noted" (Tr. 19);

- at that same visit, "[L.D.S.] was described as being 'off-the-wall' on[c]e off medications and it was noted that she was not being given her medications as prescribed due to concern of not wanting to run out of the medication[ and, c]onsequently, [she] was reported to have tantrums with episodes of throwing things" (id.);

- at "[a] January 2022 assessment[,] . . . [s]elf-control issues and argumentative/combative posture were again noted as [L.D.S.]'s primary limiting factors in peer and adult relationships" (id.); and

- "a To Whom It May Concern letter from Genee Murray-Maddox at Eastway Elementary School[,] . . . recogni[zed L.D.S.]'s problems with self regulation often resulting in her being removed from the classroom due to tantrums, screaming, and yelling" (Tr. 20).

-13-

The ALJ's discussion thus expressly acknowledged L.D.S.'s problems with social-emotional regulation, as well as her need for an IEP and medication to help control her symptoms of ADHD and ODD. Although Plaintiff faults the ALJ for not explicitly observing that L.D.S's IEP progressed from 40 minutes to 75 minutes of social/emotional skills instruction per week (see Docket Entry 8 at 10-11), the ALJ here clearly recognized that Plaintiff had an IEP "because [she] was behind in her class" (Tr. 17) and "to better manage social-emotional issues" (Tr. 18), and the ALJ labored under no obligation to comment on each detail in every piece of medical evidence in the record, see Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).[2]

In short, the ALJ supported his finding that L.D.S. had a less than marked limitation in Attending and Completing Tasks with substantial evidence.

---

[2] Plaintiff additionally complains that the ALJ failed to "acknowledge that L.[D.]S. started receiving Day Treatment at Youth Services after completing the intensive in-home therapy services." (Docket Entry 8 at 10.) That argument fails for two reasons. First, the record neither contains any "intensive in-home therapy" records nor any "Day Treatment" records from "Youth Services." Second, the ALJ discussed the only medical evidence in the record from Youth Extensions, Inc. (see Tr. 19 (referencing Tr. 1130-57 (1/16/22 comprehensive clinical assessment at Youth Extensions, Inc.), 1158-75 (12/31/20 comprehensive clinical assessment at Youth Extensions, Inc.))), which reflected entirely normal mental status examinations (see Tr. 1138-39, 1166-67).

-14-

## 2. Interacting and Relating with Others

Concerning Interacting and Relating with Others, the ALJ explained that the domain involves the following considerations:

> This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. [I]nteracting and [R]elating with [O]thers relates to all aspects of social interaction at home, at school, and in the community. Because communication is essential to both interacting and relating, this domain considers the speech and language skills children need to speak intelligibly and to understand and use the language of their community.
>
> Social Security rules provide that a school-age child without an impairment should be developing more lasting friendships with children who are of the same age. The child should begin to understand how to work in groups to create projects and solve problems. The child should have an increasing ability to understand another's point of view and to tolerate differences (e.g., playing with children from diverse backgrounds). The child should attach to adults other than parents (e.g., teachers or club leaders), and may want to please them to gain attention. The child should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.
>
> . . . Some examples of difficulty that children could have in [I]nteracting and [R]elating with [O]thers are: (i) does not reach out to be picked up and held by caregiver; (ii) has no close friends, or all friends are older or younger than the child; (iii) avoids or withdraws from people she knows, or is overly anxious or fearful of meeting new people or trying new experiences; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (e.g., in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency.

(Tr. 23-24 (internal parenthetical citations omitted).)

The ALJ thereafter provided the following explanation for finding a "less than marked limitation" (Tr. 24 (underscoring omitted)) in this domain:

> [Plaintiff] testified that [L.D.S.] has had a '360[-degree]' turnaround improvement in her behavior and that she has neighborhood friends. A teacher questionnaire from October 2019 indicated a 'serious problem' for attention seeking behavior and asking permission appropriately and 'a very serious problem' was noted for expressing anger appropriately. An obvious problem was noted for following rules. Slight and no problems were noted in the remaining five subcategories of the domain of Interacting and Relating with Others. For the domain of Interacting and Relating [w]ith Others, the more recent teacher questionnaire from December 2022, noted very serious problems in five of the 13 subcategories and an obvious problem was noted in two of the 13. All other subcategories were rated at no limitation. The To Whom It May concern letter from Genee Murray-Maddox at the Eastway Elementary School recognized [L.D.S]'s problems with self regulation and tantrums, but also described [L.D.S.] as 'a sweet and lovable little girl who was very socially aware. She loved her teachers and when she was having a good day, was the classroom helper."

(Tr. 24 (emphasis added).)

As with the domain of Attending and Completing Tasks, the ALJ represented the findings on the October 2019 teacher questionnaire as more restrictive than the teacher actually found. The teacher marked one activity as reflecting a very serious problem, two areas as involving a serious problem, one subcategory as entailing an obvious problem, and slight or no problems in the remaining nine (as opposed to "five" (id.)) subcategories. (Tr. 335.) Such findings support a less than marked limitation in the domain at issue. See Lisa K. o/b/o A.K. v. Saul, No. 7:19CV425, 2020 WL 5237808, at *5 (W.D. Va. Sept. 2, 2020) (unpublished) ("find[ing] that substantial evidence support[ed] the [ALJ]'s determination"

-16-

that the child claimant "ha[d] a less than marked limitation in the domain of [I]nteracting and [R]elating with [O]thers" where teacher questionnaire "f[ound] two serious problems and one very serious problem with activities in th[at] domain").

Regarding the December 2022 teacher questionnaire, that teacher actually assessed "[a] very serious problem" in six activities (as opposed to five activities as found by the ALJ (see Tr. 24)): "[p]laying cooperatively with other children," "[m]aking and keeping friends," "[s]eeking attention appropriately," "[e]xpressing anger appropriately," "[f]ollowing rules," and "[r]especting/obeying adults in authority." (Tr. 391.) Such findings, standing alone, could indicate a marked limitation in Interacting and Relating with Others, especially given that the ALJ did not explicitly discount the teacher's ratings on that questionnaire (see Tr. 20, 24). See, e.g., Brown ex rel. J.B. v. Colvin, No. 1:12CV1062, 2015 WL 1647094, at *6-7 (W.D.N.Y. Apr. 14, 2015) (unpublished) ("[The child claimant]'s fourth-grade special education teacher . . . found that [the child claimant] had a 'very serious problem' occurring hourly in [nine] of the relevant activities in th[e] domain [of Interacting and relating with Others]. . . . The ALJ concluded that [the child claimant] had a less than marked limitation in this domain, but [the ALJ's] cursory analysis simply does not support this finding. . . . The [c]ourt finds that, contrary to the ALJ's assessment, the record demonstrates at least a 'marked' limitation in [the child

-17-

claimant]'s ability to appropriately interact with, and relate to, others.").

As emphasized above, however, the ALJ also relied on the lesser functional impairment findings on the October 2019 teacher questionnaire, Murray-Maddox's positive comments about L.D.S.'s social abilities, and Plaintiff's testimony that L.D.S. showed a "360[-degree] turnaround" in her social abilities and "ha[d] neighborhood friends," to support the less than marked limitation in Interacting and Relating with Others. (Tr. 24.) Moreover, the ALJ found "persuasive" the opinions of the state agency psychological consultants (Tr. 21), who also found L.D.S. had a "less than marked" limitation in Interacting and Relating with Others (Tr. 85, 95), a finding that Plaintiff did not challenge (see Docket Entries 8, 11). Considered in totality, the evidence relied upon by the ALJ amounts to substantial evidence to support his less than marked limitation finding in the domain at issue. See Melissa C. o/b/o M.C. v. Kijakazi, No. 20CV885, 2022 WL 167534, at *3 n.2 (W.D.N.Y. Jan. 18, 2022) (unpublished) ("[A]lthough the teacher questionnaires noting 'serious' and 'very serious' problems *could* be read to support a marked or extreme limitation, they do not, by themselves, compel such a finding." (italics in original) (underscoring added)); Hart v. Colvin, No. 12CV1043, 2014 WL 916747, at *6–7 (W.D.N.Y. Mar. 10, 2014) (unpublished) ("With regard to the domain of 'Interacting and Relating with Others,' [one teacher] indicated that [the child claimant] had either 'no problem' or 'a slight problem' in seven of the thirteen activities

-18-

listed; 'an obvious problem' in five of the activities; and 'a very
serious problem' with expressing anger appropriately. [Another
teacher] noted that [the child claimant] had 'very serious'
problems functioning in nine of the thirteen activities
listed. . . . The ALJ's finding of less than marked limitation in
the domain of 'Interacting and Relating with Others,' reflecting
the [s]tate agency review physician's identical assessment, is
further supported by treatment records . . . indicating that [the
child claimant]'s behavior improved significantly following his
initial psychiatric evaluation . . ., and the report of a
consultive pediatric examination . . . which revealed that [the
child claimant]'s behavior and attention span were only slightly
below age level. Based on this review, the court finds that the
ALJ's discussion of the evidence in the record substantially
complies with the directives of the Social Security regulations and
rulings in a manner that allows subsequent reviewers to follow his
reasoning, and that - notwithstanding substantial evidence in the
record weighing against the ALJ's findings - there is substantial
evidence to support the conclusion that [the child claimant] had
neither marked nor extreme limitations in [Interacting and Relating
with Others]." (emphasis added) (some internal quotation marks and
internal parenthetical citations omitted)); Layton ex rel. B.O. v.
Colvin, Civ. No. 12-12934, 2013 WL 5372798, at *17 (E.D. Mich.
Sept. 25, 2013) (unpublished) ("In the domain of [I]nteracting and
[R]elating with [O]thers, [one teacher] indicated that she observed
no problems. [Another teacher] rated six of thirteen activities as

-19-

a 'serious' or 'very serious' problem. But in light of [the first teacher]'s opinion that [the child claimant] had no problems in this area and [a state agency psychological consultant]'s finding that [the child claimant's] limitations in this domain were 'Less Than Marked,' it was not unreasonable for the ALJ to find that [the child claimant] had 'less than marked limitation in [I]nteracting and [R]elating with [O]thers' despite [the second teacher]'s ratings." (emphasis added) (footnote and internal parenthetical citations omitted)).[3]

Notably, "even if the [C]ourt were to determine that the ALJ failed to adequately explain his finding that [L.D.S.] had [less than marked] limitations in this domain as opposed to . . . marked, the [C]ourt [should] find[ that] error harmless. . . . [F]or a child's impairments to functionally equal the Listings, they must result in either 'marked' limitations in two domains or an 'extreme' limitation in one domain." (quoting 20 C.F.R. § 416.926a(a))). Stroman ex rel. D.D.S. v. Colvin, No. 0:13CV2496, 2015 WL 337578, at *11 (D.S.C. Jan. 26, 2015) (unpublished) (emphasis added). As explained in more detail above and below, Plaintiff has not shown that the record evidence would compel a finding of a marked limitation in either Attending and Completing Tasks or Caring for Yourself.

_____

[3] As shown in the analysis of Plaintiff's contentions regarding the domain of Attending and Completing Tasks, the ALJ's discussion of the record evidence defeats Plaintiff's argument that the ALJ failed to acknowledge "much of L.[D.]S.'s behavior issues or the extent of the help that she received" (Docket Entry 8 at 10 (bold font and block formatting omitted)).

-20-

In sum, Plaintiff's contentions that the ALJ failed to support his finding of "less than marked limitation" in Interacting and Relating with Others with substantial evidence do not warrant relief.

**3.   Caring for Yourself**

The ALJ began his analysis of the domain of Caring for Yourself by describing the SSA's parameters for that domain:

> This domain considers how well a child maintains a healthy emotional and physical state, including how well a child satisfies her physical and emotional wants and needs in appropriate ways.  This includes how the child copes with stress and changes in the environment and how well the child takes care of her own health, possessions, and living area.

> Social Security rules provide that a school-age child without an impairment should be independent in most day-to-day activities (e.g., dressing and bathing), although she may still need to be reminded sometimes to do these routinely.  The child should begin to recognize that she is competent in doing some activities but has difficulty doing others.  The child should be able to identify those circumstances when she feels good about herself and when she feels bad.   The child should begin to develop understanding of what is right and wrong, and what is acceptable and unacceptable behavior.  The child should also begin to demonstrate consistent control over her behavior, and be able to avoid behaviors that are unsafe or otherwise not good for her.  At this age, the child should begin imitating more of the behavior of adults she knows.

> . . . Some examples of difficulty children could have in caring for themselves are: (i) continues to place non-nutritive or inedible objects in the mouth (e.g., dirt, chalk); (ii) often uses self-soothing activities that are developmentally regressive (e.g., thumb-sucking or re-chewing food); (iii) does not feed, dress, toilet, or bathe self age-appropriately; (iv) engages in self-injurious behaviors (e.g., suicidal thoughts or actions, self-inflicted injury, or refusal to take medication), or ignores safety rules; (v) does not spontaneously pursue enjoyable activities or interests (e.g., listening to music, reading a book); (vi) has restrictive or

-21-

stereotyped mannerisms (e.g., head banging, body rocking); or (vii) had disturbances in eating or sleeping patterns.

(Tr. 25-26 (internal parenthetical citations omitted).)

Subsequent to that discussion, the ALJ offered the following analysis supporting his finding of a "less than marked limitation" (Tr. 26 (underscoring omitted)) in this domain:

> [Plaintiff] testified that [L.D.S.] is diligent about her grooming and hygiene and that she does chores and cleans her room. In the domain of Caring for [Your]self, the teacher questionnaire from October 2019 indicated <u>a serious problem in two of the 10 subcategories and an obvious problem in three of the subcategories</u>. The remaining categories had no or slight limitation. The more recent teacher questionnaire from December 2022 noted <u>a very serious problem in six of the 10 subcategories of the domain of Caring for [Your]self. Limitations were indicated due to impatience and using good judgment as opposed to inability or unawareness. No problem was noted in the remaining four subcategories</u>.

(<u>Id.</u> (emphasis added).)

As with the other domains discussed above, the ALJ's reliance on the October 2019 teacher questionnaire, which found a serious problem in two of the ten activities (<u>see</u> Tr. 336), supports his less than marked limitation in this domain. <u>See Tikia W. v. Kijakazi</u>, No. 2:22CV416, 2023 WL 11053417, at *12 (E.D. Va. Aug. 8, 2023) (unpublished) (rejecting the plaintiff's "assert[ion] that the ALJ failed to incorporate the responses within [a teacher]'s questionnaire that reflected more serious limitations in [the child claimant]'s ability to care for herself," because "a finding of <u>a serious problem in only two out of ten areas</u> of the domain[ of Caring for Yourself] does not automatically result in a 'marked' limitation in the domain" (emphasis added), <u>recommendation adopted</u>

-22-

sub nom., Tikia W. v. O'Malley, 2024 WL 1217405 (E.D. Va. Mar. 21, 2024) (unpublished).

In contrast to the October 2019 teacher questionnaire, the teacher's findings on the December 2022 questionnaire, finding a very serious problem in six of the ten activities in Caring for Yourself (see Tr. 393), certainly could, standing alone, support a marked (or even extreme) limitation in that domain, particularly because the ALJ did not expressly discount that teacher's findings (see Tr. 20, 26). The ALJ, however, did find "not persuasive" (Tr. 21) the opinion of the state agency psychological consultant at the initial level of review on L.D.S.'s prior claim for CSSI that L.D.S. had a marked limitation in Caring for Yourself (see Tr. 75) based upon the following reasoning:

> In the domain of Caring for [Your]self, the teacher questionnaire from October 2019 indicated a serous problem in two of the 10 subcategories and an obvious problem in three of the subcategories. The remaining categories had no or slight limitation. . . . Limitations [on the December 2022 teacher questionnaire] were indicated due to impatience and [not] using good judgment as opposed to inability or unawareness. No problem was noted in . . . . four subcategories. . . . [Plaintiff] testified that [L.D.S.] is fastidious about her grooming and hygiene and that she does chores and cleans her room.

(Tr. 21 (emphasis added).) Thereafter, the ALJ found "persuasive" (Tr. 21) the opinions of the state agency psychological consultants in the instant claim for CSSI that L.D.S. had less than marked limitation in the domain in question (see Tr. 85-86, 96). Notably, Plaintiff did not assign error to that finding. (See Docket Entries 8, 11.) The ALJ also relied on Plaintiff's testimony

-23-

describing L.D.S. as "diligent about her grooming and hygiene" and indicating that she performs "chores and cleans her room" (Tr. 26 (referencing Tr. 57)), as well as consultative psychological examiner Donna Mansour's report that L.D.S. "engaged in typical age-appropriate activities at home" in that "[s]he c[ould] dress and feed herself, bathe herself, obey safety rules, clean her room, put her toys away, play on her tablet, read, do puzzles, and make friends and get along" (Tr. 18-19 (referencing Tr. 616)). That evidence, despite other evidence weighing against the ALJ's determination, amounts to substantial evidence supporting the ALJ's less than marked limitation in Caring for Yourself. See Tikia W., 2023 WL 11053417, at *12 (noting that substantial evidence supported ALJ's less than marked limitation in Caring for Yourself where, despite teacher questionnaire finding serious problems in that domain, "the ALJ cited to [the state agency psychological consultants'] findings that [the child claimant] ha[d] a less than marked limitation in caring for herself, which [wa]s supported by the consultative exam indicating that [she] ha[d] intact self-care skills" (some internal quotation marks omitted)).[4]

---

[4] As with the other domains discussed above, the ALJ's discussion of the evidence in the record adequately recognized "L.[D.]S.'s behavior issues [and] the extent of the help that she received" (Docket Entry 8 at 10 (bold font and block formatting omitted)).

-24-

Put simply, Plaintiff has not shown that the ALJ failed to support his less than marked limitation in Caring for Yourself with substantial evidence.[5]

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

November 26 , 2025

---

[5] If, as recommended previously, the Court upholds the ALJ's determinations regarding the other domains, any error by the ALJ as to this domain would amount to harmless error. See Stroman, 2015 WL 337578, at *11.